UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JASON ALLEN OLRICH,

                Plaintiff,

v.                                  Case No. 18-cv-1980-pp

KENOSHA COUNTY, *et al.*,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING MOTION TO AMEND COMPLAINT (DKT. NO 13), DENYING WITHOUT PREJUDICE AMENDED MOTION TO APPOINT COUNSEL (DKT. NO. 9), DENYING MOTION TO CERTIFY CLASS (DKT. NO. 5) AND SCREENING COMPLAINT (DKT. NO. 1)**

---

The plaintiff, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, denies his motion to amend the complaint, consolidate cases and stay screening, dkt. no. 13, and screens his original complaint, dkt. no. 1. It also denies the plaintiff's amended motion to appoint counsel, dkt. no. 9, and his motion to certify class, dkt. no 5.

**I.   Motion for Leave to Proceed without Prepaying Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the civil case filing fee if he meets certain conditions. One of

1

those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 18, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $0.71. Dkt. No. 7. The court received that fee on January 2, 2019. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee and will require the plaintiff to pay the **$348.58** balance of the filing fee as he is able.

II. **Motion to File Amended Complaint, Stay Screening and Consolidate with Case 18-cv-1985 (Dkt. No. 13)**

The plaintiff filed a motion titled "Motion to File Amended Complaint." Dkt. No. 13 at 1. The caption of the motion listed three case numbers—this one, Case No. 18-cv-1985, and Case No. 18-cv-1518. Id. The motion cited Federal Rule of Civil Procedure 15(a)(2), which requires a party to obtain leave of court to amend the complaint if more than twenty-one days have passed since the filing of the original complaint. Id. The motion also asked the court to delay screening all three cases until after he'd filed amended complaints, which he said he'd be doing in the next three weeks. Id. He told the court that he needed to amend the complaints because they were "facially bald" and didn't show how his rights were violated and listed defendants who weren't involved in violating his rights; he claims this is because he got "faulty advice and assistance" from another inmate. Id. at 1-2.

2

The motion also asked the court to consolidate this case with Case No. 18-cv-1985, and to allow him to file a single amended complaint for both. Id. at 2. He explained that "the issues can and should be brought in one action as some of the defendant(s) will be the same in both case(s)." Id.

The Federal Rules of Civil Procedure provide that a court may consolidate cases only if those cases share "a common question of law or fact." Fed. R. Civ. P. 42(a). In this case, the plaintiff alleges that while he was at the Kenosha County Jail in December 2017, he was fed spoiled meat which made him sick, and that despite his complaints, the defendants did nothing. Dkt. No. 1. In Case No. 18-cv-1985, the plaintiff alleged that in mid-January 2018 while he was at the Kenosha County Jail, another inmate sexually harassed him, and that when he told the defendants, the defendants did nothing about it. See Olrich v. Kenosha County, Case No. 18-cv-1985, at Dkt. No. 1. The allegations in the two cases do not share a common question of fact or law. They involve different incidents on different dates. The only thing they have in common is that they involve some of the same defendants.

The court will not grant the plaintiff leave to file the amended complaint, because it includes both the allegations regarding the spoiled meat and the allegations of indifference to sexual harassment by a fellow inmate. The plaintiff cannot join these unrelated claims in the same lawsuit. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits . . . .").

For the same reason, the court will deny the plaintiff's request to consolidate this case with Case No. 18-cv-1985. It will also deny as moot the plaintiff's request to stay screening until he filed the amended complaint.

The original complaint is the operative complaint, and that is the complaint the court screens here.

**III.   Screening the Complaint (Dkt. No. 1)**

   A.   <u>Federal Screening Standard</u>

Although the plaintiff has demonstrated that he does not have the money to pay the filing fee, the court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). For this reason, district courts "screen" complaints filed by self-represented plaintiffs to determine whether the complaint must be dismissed under these standards.

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States and 2) the person who deprived him of that right was acting

4

under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    B.    The Plaintiff's Allegations

The plaintiff has sued nine defendants—Kenosha County, the Kenosha County Detention Center, the Kenosha County Jail, Sheriff David Beth, "Jail Administrator," "John or Jane Doe Food Service Provider," correctional officer Ashley Ramona, Corporal Hainey and correctional officer Shelby. Dkt. No. 1 at 3-4.

The plaintiff alleges that around November or December of 2017, the plaintiff was incarcerated at Kenosha County Jail on the segregation X-Block. Dkt. No. 1 at 5. He says that during that time, the Jail was serving spoiled meat, making the plaintiff and other inmates sick. Id. One day, the plaintiff became so sick that he was throwing up and unable to keep down food. Id. The plaintiff told Ramona, who told the plaintiff to "deal with it." Id. The plaintiff says that when Hainey came through X-Block, the plaintiff told him that the meat was spoiled and that he might have food poisoning; Hainey told the plaintiff he couldn't do anything and advised him to file a grievance. Id. The plaintiff asserts that Hainey could have called a nurse or other medical personnel to see him but did not do so. Id. The plaintiff filed a grievance about

5

the spoiled meat, and food services admitted that the meat was recalled and "admitted fault with this incident." Id.

The plaintiff also alleges that when he was sent to prison around February 23, 2018, defendant Shelby threw out all his grievances when he packed up the plaintiff's property, including medical papers and other documentation for contemplated litigation and grievances about the spoiled meat. Id. at 5–6.

### C. The Court's Analysis

The plaintiff alleges that he "kept" being served spoiled meat, and that one day it made him so sick that he threw up and had to go hungry.

Occasional instances of food or water contamination in prison will not support a claim of deliberate indifference to conditions of confinement under the Eighth Amendment. See, *e.g.*, McRoy v. Aramark Correctional Servs., Inc., 268 F. App'x 479 (7th Cir. 2008) (no deliberate indifference where inmate was served undercooked chicken on one occasion, sour milk on six occasions, and spoiled sandwich meat on three occasions, where inmate was offered replacement items when available, and no further incidents occurred); Franklin v. True, 76 F.3d 381 (7th Cir. 1996) (concluding that one instance of food poisoning was insufficient to state conditions-of-confinement claim); Hadley v. Dobucki, 59 F.3d 173, 1995 WL 364225 (7th Cir. 1995) (occasional "foreign objects" such as aluminum foil in prison food did not state an Eighth Amendment claim). If, however, the plaintiff's complaint indicates that prison officials knew of a pattern of inmates being injured by bad food and did not

6

thing to remedy the problem, the plaintiff states a viable deliberate indifference claim. Green v. Beth, 663 F. Appx. 471, 472 (7th Cir. 2016) (finding that district court should not have dismissed claims about an "ongoing" problem of injuries suffered by inmates from biting into foreign objects in the food served in jail and the defendants failed to act).

The plaintiff does not explain how many times he was fed spoiled meat, or who decided to feed it to him, or how long this went on. It is not clear from the plaintiff's complaint whether he told anyone other than Ramona and Hainey about the spoiled meat. As it stands, then, the complaint does not state a claim of deliberate indifference to conditions of confinement against Ramona or Hainey. If the plaintiff wishes to proceed on this claim, he must file an amended complaint explaining who fed him the spoiled meat, how many times or over what period he was fed spoiled meat, who he told, and what (if anything) they did about it.

Nor does the complaint state a claim against Hainey for being deliberately indifferent to his serious medical need. To state a claim of deliberate indifference to a serious medical need, a plaintiff must allege that (1) he suffered from an objectively serious medical condition and (2) the defendants were deliberately indifferent to a risk of serious harm from that condition. Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012).

Regardless of how a claim of deliberate indifference arises under the Eighth Amendment (conditions of confinement, medical needs, excessive force, etc.), the alleged deprivation "must be, objectively, 'sufficiently serious.'"

7

Henderson v. Sheahan, 196 F.3d 839, 845 (7th Cir.1999) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The Court of Appeals for the Seventh Circuit has found that a single instance of food poisoning is insufficient to state a deliberate indifference claim. See Franklin v. True, 76 F.3d 381 (7th Cir.1996) (unpublished) (concluding that one instance of food poisoning is insufficient to state conditions-of-confinement claim); see also George v. King, 837 F.2d 705, 707 (5th Cir. 1988) (finding that that one incident of food poisoning does not violate an inmate's constitutional rights). The plaintiff says that he got sick, and that he told Hainey that he "may have food poisoning." This is not enough to show that the plaintiff had an objectively, sufficiently serious medical condition such that Hainey violated his constitutional rights by doing nothing more than telling the plaintiff to file a grievance. If the plaintiff wants to proceed on a claim of deliberate indifference to serious medical need, he must allege that he had an objectively serious medical need, and that particular defendants were aware of that need but were deliberately indifferent to it.

The plaintiff has not stated a claim against the Kenosha County Detention Center or the Kenosha County Jail, and he cannot. Section 1983 allows a plaintiff to sue any "person" who violates his constitutional rights while acting under color of state law. KCDC and the county jail are not "persons," and they are not free-standing legal entities that can be sued in their own right; they are part of Kenosha County. See, *e.g.*, Gill v. Brown Cty. Jail, No. 17-cv-873, 2018 WL 3014834, at *3 (E.D. Wis. June 15, 2018) (citing

Gambrell v. Brown Cty. Jail Health Servs., No. 15-C-1146, 2015 WL 6873229, at *2 (E.D. Wis. Nov. 9, 2015) and Whiting v. Marathon Cty. Sheriff's Dep't, 538 F.3d 763, 778 (7th Cir. 2008)). The court will dismiss KCDC and the Kenosha County Jail as defendants; the plaintiff must not name them in his amended complaint.

The complaint does not state a claim against Kenosha County. "A municipality cannot be held liable for a constitutional violation in the absence of a custom, policy or practice that effectively caused or condoned the alleged constitutional violations." Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012) (citing, *e.g.*, Wragg v. Vill. of Thornton, 604 F.3d 464, 467 (7th Cir. 2010); Monell v. New York Dep't of Soc. Servs., 436 U.S. 658 (1978)). The plaintiff has not alleged any such custom, policy or practice. The plaintiff must not name Kenosha County in the amended complaint unless he has proof of such a custom, policy or practice.

Nor does the complaint state a claim against the sheriff or the jail administrator. It appears that the plaintiff has sued these two defendants because they were supervisors—they ran the jail during the time the plaintiff allegedly was fed spoiled meat. To show that a supervisor is liable under §1983, a plaintiff must show that the supervisor was "personally responsible for the deprivation of the constitutional right." Matthews, 675 F.3d at 708 (7th Cir. 2012) (quoting Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001)). "To show personal involvement, the supervisor must 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they

might see.' *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)." Id. The plaintiff has not alleged that the sheriff or the jail administrator knew about the issue with the spoiled meat, or that they facilitated, approved, condoned or turned a blind eye to it. The plaintiff must not name the sheriff or the jail administrator in the amended complaint unless he can state proof that they were personally involved in the spoiled meat issue.

The plaintiff has not stated a claim against Shelby. He alleges only that Shelby discarded some of his property, including grievances related to this lawsuit, while packing his property. He does not allege that Shelby intentionally threw out pertinent documents or that Shelby did so with ill intent. At best, the plaintiff has alleged that Shelby was negligent. Because negligence, even gross negligence, is not actionable under §1983, the plaintiff's allegations do not state a claim. See, *e.g.*, Rosario v. Brown, 670 F.3d 816, 821 (7th Cir. 2012). The plaintiff must not name Shelby in the amended complaint unless he has proof that Shelby was more than negligent in throwing out grievances about the spoiled meat.

The plaintiff may have a claim against the food service provider. He alleges that the food service provider has admitted that it knew the meat was bad and that it is at fault. In the amended complaint, the plaintiff should provide the court with more detail about this—who did he communicate with at the food service provider? Who told him that the food service provider knew the meat was bad and admitted fault? About when did that happen?

The court will give the plaintiff the opportunity to amend his complaint. When writing his amended complaint, the plaintiff should provide the court with enough facts to answers to the following question: 1) Who violated his constitutional rights? 2) How did each person violate his rights? 3) Where did each person violate his rights? and 4) When did each person violate his rights? The plaintiff's complaint does not need to be long, or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did to violate the plaintiff's rights.

The court is enclosing a copy of its complaint form and instructions. The plaintiff should write the word "AMENDED" in front of the word "COMPLAINT" at the top of the first page, and then put the case number for this case—18-cv-1980—in the field for "Case Number." He must list all the defendants he is suing in the caption of the amended complaint. He must use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If the space is not enough, he may use up to five additional sheets of paper (putting page numbers on each additional page). The amended complaint takes the place of the prior complaint, and must be complete in itself. The plaintiff cannot simply say, "Look at my first complaint for further information." See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1056-57 (7th Cir. 1998).

If the plaintiff files the amended complaint by the deadline, the court will screen it under 28 U.S.C. §1915A.

**IV.   Amended Motion to Appoint Counsel (Dkt. No. 9)**

The plaintiff also filed a motion to appoint counsel, dkt. no. 4, which was then replaced by an amended motion to appoint counsel, dkt. no. 9. In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish et al., 923 F.3d 486, 490 (7th Cir. 2019), (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers'

names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The amended motion says that the plaintiff has written "countless lawyers" seeking help, and has been denied. Dkt. No. 9 at 2. He attached nine letters from lawyer declining to assist him, as well as a letter from the State Bar of Wisconsin indicating that its Lawyer Referral and Information Service does not make referrals in the area of constitutional law. Dkt. No. 9-1 at 9-19. The court is satisfied that the plaintiff made a good faith effort to find counsel on his own, satisfying the first prong of the Pruitt requirements. The remaining

13

question is whether the plaintiff is competent to litigate his case himself. The plaintiff explains that he can't afford a lawyer, that the case is complex and that he suffers from diagnosed mental illness (which he describes in detail). Dkt. No. 9 at 1. The plaintiff notes that he struggles with time management, organization, memorization and the ability to concentrate. <u>Id.</u> He also references his need for more time and special help to take tests, do his homework and understand words. <u>Id.</u> He says that he has hallucinations and is on an off suicide watch. <u>Id.</u> He notes that he has only limited knowledge of the law, and that he has very limited access to the law library. <u>Id.</u> at 2.

Some of the issues the plaintiff identifies in his amended motion are issues that most incarcerated plaintiffs struggle with—the inability to hire a lawyer, lack of knowledge of the law, limited time in the law library. The plaintiff's situation is complicated, however, by what appears to be severe mental illness. It certainly sounds as though his illness makes it hard for him to concentrate and focus, and perhaps to remember and meet deadlines. It isn't clear, but he may also have difficult accessing his legal documents, or the law library, if he is on suicide lock-down. The court takes these concerns seriously.

At this early stage, however, the plaintiff has managed to file (apparently with the help of another inmate) both a complaint and an amended complaint, as well as a motion for class certification and an original and amended motion to appoint counsel. The court has been able to understand his allegations; he writes clearly and understandably. Right now, the only thing the plaintiff needs to do is to file an amended complaint that complies with the instructions the

14

court has provided in this order. He doesn't need to go to the law library or have an understanding of the law. He just needs to explain to the court the exact dates when he was fed the spoiled meat, who gave it to him, how many times he was given it and for how long, who he told about it, what they did and what impact it had on him. The court believes, having read his pleadings so far, that the plaintiff can provide the court with this information. Given the plaintiff's issues, the court will give him extra time to file the amended complaint—thirty days, more than it gives other prisoners. If he needs more time, the plaintiff should file a motion asking for it, but he should make sure he files that motion in time for the court to receive it *before* the deadline for filing the amended complaint.

If, as the case moves along, the plaintiff finds himself unable to accomplish the tasks the court sets, he may renew his motion to appoint counsel.

**V.    Motion to Certify Class (Dkt. No. 5)**

The plaintiff filed a motion to certify class. Dkt. No. 5. But his complaint does not name any other prisoners as plaintiffs; the plaintiff is the only one who signed the complaint. "[C]ourts have repeatedly declined to allow *pro se* prisoners to represent a class." Saldana v. Leyendecker, No. 16-cv-1577, 2017 WL 706304, at *3 (E.D. Wis. Feb. 22, 2017) (citing Howard v. Pollard, 814 F.3d 476, 478 (7th Cir. 2015); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975 (plain error to permit an imprisoned *pro se* litigant to represent fellow inmates in a class action); Lee v. Gardinez, No. 11-570, 2012 WL 143612, at *1

15

(S.D. Ill. Jan. 18, 2012); Fymbo v. State Farm Fire and Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000). Under Federal Rule of Civil Procedure 23(a)(4), a named plaintiff must be able to provide the class with adequate representation. A critical factor in determining the adequacy of representation is the legal skill of those conducting the litigation. Sec'y of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1986) (*en banc*). Even a plaintiff well-versed in the law cannot provide representation that satisfies Rule 23. The court will deny this motion.

**VI. Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES without prejudice** the plaintiff's amended motion to appoint counsel. Dkt. No. 9.

The court **DENIES** the plaintiff's motion to certify class. Dkt. No. 5.

The court **DENIES** the plaintiff's motion to file an amended complaint; **DENIES** the plaintiff's motion to consolidate cases; and **DENIES as moot** the plaintiff's motion to stay screening until he files an amended complaint. Dkt. No. 13.

The court **ORDERS** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by the end of the day on **April 10, 2020.** If the court does not receive the amended

16

complaint by the end of the day on April 10, 2020, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank prisoner complaint form.

Dated in Milwaukee, Wisconsin, this 11th day of March 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**